IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 15, 2018 Session

## MARCUS DWAYNE TOWNSEND v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2013-C-2084    Mark J. Fishburn, Judge**

_____

### No. M2017-00117-CCA-R3-PC
_____

The Petitioner appeals from the Davidson County Criminal Court's denial of his post-conviction petition related to his guilty plea convictions of two counts of rape of a child, for which he is serving concurrent twenty-five-year sentences as a violent child rapist with 100% service.  On appeal, he contends that the post-conviction court erred in denying his petition and argues that he received the ineffective assistance of counsel.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and NORMA MCGEE OGLE, JJ., joined.

Michael Richard Meise (on appeal), Dickson, Tennessee; and Edward Herbert (at hearing), Nashville, Tennessee, for the appellant, Marcus Dwayne Townsend.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Glenn R. Funk, District Attorney General; Tammy Meade, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner's convictions pertain to sexual assaults of his stepdaughter.  On March 5, 2013, the then-thirteen-year-old victim disclosed to her mother that the Petitioner had repeatedly forced her to perform oral sex on him between December 16, 2010 and October 31, 2012.  The Petitioner was charged with six counts of aggravated sexual battery and three counts of rape of a child.  The evidence against the Petitioner included a recording of a telephone call between the victim and the Petitioner in which the Petitioner admitted he had committed the offenses.  The call was arranged by a Metropolitan Nashville law enforcement detective, who provided the recording

equipment and instructed the victim to confront the Petitioner about the relevant events and to talk to him until he made an admission. By all accounts, the Petitioner was a resident of California and was physically present in California when the call occurred. The Petitioner did not consent for the call to be recorded.

After the indictment was returned, counsel filed a motion to suppress evidence of the recorded call on the basis that the Petitioner had a reasonable expectation of privacy at the time of the recording. The motion alleged that California was a statutory two-party consent state in which both parties to a conversation must be aware and must consent to a recording of their conversation. In its response to the motion, the State took the position that only one party's consent was necessary under California law if a recording was made in order to obtain evidence for a prosecution of a violent felony. The State argued that the offenses for which the Petitioner was under indictment in Tennessee were violent felonies pursuant to California law. The court conducted a hearing on the motion to suppress and took the matter under advisement.

The parties reached a plea agreement before the court issued a ruling on the motion to suppress. Thereafter, the Petitioner pleaded guilty to two counts of rape of a child and was sentenced pursuant to the agreement to an effective twenty-five-year sentence. At the guilty plea hearing, the following occurred:

> THE COURT: . . . [Y]ou're charged with six counts of aggravated sexual battery, carrying sentences of 8 to 30 years in the state penitentiary and fines of up to $25,000, if [convicted] of any of those counts, you would have to serve whatever sentence was imposed at a hundred percent, you would not be a [sic] parole eligible. Also if convicted of that offense, any of those offenses, you would be required to be on lifetime community supervision and sex offender registry. You're also charged in count seven through nine with rape of a child, carrying a sentence of 25 to 40 years in the state penitentiary, fines of up to $50,000, if convicted of those offenses, again, you would not be eligible for parole and you would have to be on lifetime community supervision and sex offender registry; is that your understanding, sir, of what you're charged with and the possible punishment related to those offenses?
>
> [THE PETITIONER]: Yes, sir[.]
>
> . . . .
>
> THE COURT: I understand you're going to be pleading guilty to three counts of rape of a child. You're [going to] be – excuse me, it's counts seven and nine, not eight. Two counts of rape of a child, you're

[going to] be sentenced in each case to 25 years as a violent child rapist, so therefore the sentences will be at a hundred percent with no parole eligibility. Those sentences will run concurrently for a total effective sentence of 25 years. It says "sex offender registry," but it's lifetime community supervision and sex offender registry, those are two different things, do you understand that?

[THE PETITIONER]: I don't understand[.]

THE COURT: Lifetime community supervision is almost like being on parole for the rest of your life.

[THE PETITIONER]: Okay.

. . . .

THE COURT: Do you have any questions at all regarding what you're charged with, the possible punishment related to those offenses or what you're pleading to and the actual punishment being imposed:

[THE PETITIONER]: No, sir.

The Petitioner answered affirmatively when asked (1) if he had had the opportunity to discuss in detail the facts and circumstances of the events which led to his arrest, (2) if his attorney had explained the applicable law and the State's evidence, (3) if his attorney had discussed any available defenses and strategies, and (4) if his attorney had answered any questions satisfactorily. The Petitioner responded negatively when asked if he had any complaints about his attorney. The Petitioner indicated that he had not been threatened or promised anything in exchange for his guilty pleas and that he was pleading guilty because he was guilty.

Counsel stated that he and the Petitioner had "gone over . . . extensively" the change in the law relative to punishment for the charged offenses, noting that the indictment alleged conduct occurring over the course of "several years." Counsel stated, "[T]his is what he wants to do." Counsel stated that the Petitioner should receive pretrial jail credit for time following his arrest in California. The court stated that the Petitioner did not contest his extradition and was entitled to the credit.

Thereafter, the Petitioner filed a timely pro se petition for post-conviction relief. Appellate counsel was appointed, and an amended petition was filed. As pertinent to this appeal, the Petitioner alleged that he received the ineffective assistance of counsel because he was "misinformed that he would be subject to lifetime supervision and the sex

-3-

offender registry for life," that he was not informed that he would be sentenced as a Range II offender and that he would not receive "good time credits," that he was misled about his release eligibility date, and that he was not informed that he would be required to serve 100% of his sentence. The Petitioner alleged that his guilty plea was not knowing and voluntary due to counsel's shortcomings.

At the post-conviction hearing, counsel testified that he was retained to represent the Petitioner after the Petitioner was detained in California. He described the Petitioner as having a high intelligence level. He said that he and the Petitioner made the decision "not to bond out" in order to facilitate the plea negotiation process. He said that their goal had always been to reach a plea agreement and that the evidence was "damning." He said that he and the Petitioner discussed the charges and the possible sentences, including consecutive sentencing. Counsel said they discussed the fact that the sentencing law had changed during the time period alleged in the indictment. Counsel said he pursued a theory at one hearing that some of the offenses fell within the time period in which the sentencing range was fifteen to twenty-five years, rather than the new range of twenty-five to forty years. Counsel said they discussed the sex offender registry. Counsel said that although he did not put "community supervision for life" on the written plea agreement, he was "almost positive" they discussed this requirement.

Counsel testified that he reviewed the discovery with the Petitioner, except that he did not review the victim's forensic interview with the Petitioner because the district attorney's policy was that the forensic interview had to be reviewed in the office. Counsel said that the Petitioner had admitted his culpability and that "it wasn't really a case of who done it [sic]." Counsel said his practice in advising a person who was charged with a sexual offense was to tell the person to be prepared to serve 100% of a sentence. Counsel had no specific recollection but did not think he and the Petitioner discussed behavioral credits.

Counsel testified that the victim "came off extremely well in the forensic interview" and that she was an "A-plus witness." He said the recorded call, "basically where [the Petitioner] admitted his involvement in this," provided corroborating evidence.

Counsel testified that he filed a motion to suppress the recorded call in an effort to obtain leverage in plea negotiations. He said that the use of "reverse phone calls" was the subject of well-settled Tennessee law and that he moved for suppression based upon California's two-party consent law.

Counsel testified that he did not attempt to speak with the victim for tactical reasons and because he "felt like [he] knew what was going on." Counsel said that once the Petitioner admitted his culpability, counsel did not think it was necessary to speak to

-4-

the victim and cause her to relive the relevant events. Counsel said he had information that the victim and the victim's mother did not want a harsh sentence, which he hoped would be useful in settling the case. He said that two assistant district attorneys had been involved in the case and that the second one, who was the prosecutor with whom he negotiated the plea agreement, thought that uncharged criminal conduct had occurred and that she "stood firm" on a twenty-five year offer and had not made an offer involving a plea to a lesser offense, such as aggravated sexual battery. Counsel said the Petitioner did not want to subject the victim to a trial and "candidly admitted" his culpability. Counsel said the Petitioner wanted to spend the least amount of time possible in jail. Counsel said, "[T]his was a case for trying to get the best deal we could."

Counsel testified that the trial was scheduled for the Monday following the hearing on the motion to suppress. Counsel said that he reviewed the plea agreement with the Petitioner and that the Petitioner read the document. Counsel said that, during the guilty plea hearing, the Petitioner asked the court about the community supervision for life requirement and that the court seemed satisfied with the Petitioner's understanding and acceptance of the terms. Counsel said it had been the Petitioner's decision to plead guilty and that counsel did not make the decision. Counsel said that he would have been prepared for a trial on the following Monday if the Petitioner had not pleaded guilty but that "there was really no defense." Counsel said he told the Petitioner that if the case went to trial, consecutive sentencing was likely. Counsel said the Petitioner was remorseful, "a pleasure to deal with," and had family support.

The Petitioner testified that he had never been arrested before this case. He said he had a college degree in aircraft maintenance. He said he had been open with counsel, whom he trusted and upon whose advice he felt he could rely. The Petitioner said that, due to his lack of familiarity with criminal proceedings, he had not known many times what to ask counsel. The Petitioner said that he asked numerous times for counsel to contact the victim and the Petitioner's wife, that counsel assured the Petitioner he would, and that counsel never gave the Petitioner a reason why he had not.

The Petitioner testified that around counsel's third visit with him, counsel said he had been talking with the prosecutor about a plea agreement for aggravated sexual battery and an eight-year split confinement sentence. The Petitioner said counsel showed him a sentencing chart which reflected an eight- to twelve-year sentence for aggravated sexual battery, the range, and the release eligibility date. The Petitioner said counsel "didn't really break down any other specifics as far as mandatory or community supervision or anything[.]" The Petitioner did not recall counsel ever mentioning community supervision for life.

The Petitioner testified that on the day of the guilty plea hearing, counsel advised him of the twenty-five-year offer, which the Petitioner rejected. The Petitioner said that

he asked counsel if counsel had spoken with the victim and the victim's mother. The Petitioner said he wanted counsel to investigate to see that the Petitioner was not the "monster" that the charges might otherwise suggest. The Petitioner thought this might help with the plea negotiations. The Petitioner said that he was later "called back over to the courtroom," where counsel advised him that he was going to have to sign the plea agreement or "do life" because counsel had no defense to present and the prosecution thought the Petitioner was a monster. The Petitioner said he told counsel he did not want to sign the agreement. The Petitioner said he was prepared to go to trial and testify in his own defense. The Petitioner said counsel had not explained, and the Petitioner had not known, that he faced a sentence much greater than twenty-five years by going to trial. The Petitioner said that the only part of the plea agreement he read was "'100 percent,' the rape, two counts of rape and the sex offender[.]" The Petitioner said he asked counsel why 100% was required and that counsel said, "that's what they're offering you[.]" The Petitioner said he asked counsel, "Do I still get my good time?" The Petitioner said counsel raised his hands and said he did not know. The Petitioner said that he signed the agreement with the thought of "being able to get good time and . . . to knock a 25-year sentence down to at least 12 years with good behavior credits[.]" The Petitioner said that he had not understood the full meaning of 100% as it regarded ineligibility for behavior credits but that he had understood it meant he could not receive parole.

The Petitioner testified that, during the guilty plea hearing, he had told the trial court that he did not understand lifetime community supervision. The Petitioner said this was the first time he had heard of lifetime community supervision. The Petitioner said the court told him it was similar to the sex offender registry and to being on parole. The Petitioner said he did not understand what the court meant about it being similar to parole but that he told the court he understood because he "didn't want to hold up the court proceedings." The Petitioner said he was not told he could reject what he had already signed. He said that all he could think about was counsel's statement that either he could sign the plea agreement or "do life." He said he did not fully understand the plea agreement. He said that he would have chosen to go to trial if he had understood the consequences of community supervision for life.

When the prosecutor said on cross-examination, "Sir, you admitted you did it," the Petitioner responded, "I didn't – I never made that admission." When asked if he was saying that the victim was lying, he said, "Yes." On questioning by the court, the Petitioner was asked about his acknowledgment at the guilty plea hearing that he sexually assaulted the victim more than one time and was asked whether he would have denied the offenses if he had gone to trial. The Petitioner responded, "Yes, sir, I would have denied it." He said he never told counsel the offenses had not occurred "[b]ecause we never talked about it." The Petitioner then said he told counsel that he had not done the things with which he had been charged. He later clarified, "I didn't deny sexual contact, but I did deny the oral sex to my attorney and that's why we never talked about it."

-6-

The plea agreement and a transcript of the guilty plea hearing were received as exhibits.

The Petitioner acknowledged that he faced a sentence of 123 years at 100%. He said he remembered the trial court's advising him during the plea hearing that the court would stop the proceedings for the Petitioner to confer with counsel if the Petitioner requested. The Petitioner agreed he never asked to speak to counsel during the hearing.

After receiving the evidence, the post-conviction court found that the Petitioner had failed to prove by clear and convincing evidence that he received the ineffective assistance of counsel. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

The Petitioner contends that he received the ineffective assistance of counsel. He argues that counsel was ineffective in (1) advising him to plead guilty before the court ruled on the motion to suppress and the motion to dismiss, (2) failing to preserve a certified question of law relative to the suppression issue, and (3) failing to advise him that he would be ineligible for sentence reduction credits. Some of the issues the Petitioner has raised on appeal were not raised in the post-conviction court. To the extent he contends on appeal that counsel was ineffective for advising him to plead guilty before the court ruled on the motion to suppress, for advising him to plead guilty before the court ruled on the motion to dismiss, and for failing to preserve the suppression issue as a certified question of law, these theories were not raised in the post-conviction court. Our consideration of them is waived. *See, e.g., State v. Rowland*, 520 S.W.3d 542, 545 (Tenn. 2017) ("Generally, issues raised for the first time on appeal are waived."); *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996). We will consider the merits of the remaining issue.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the

defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Petitioner's claim is that due to counsel's ineffective assistance, his guilty plea was not knowingly and voluntarily entered. The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The post-conviction court found that the Petitioner, a college graduate, understood that he was pleading guilty and would serve twenty-five years at 100% without the opportunity for parole. The court found that the Petitioner and counsel discussed the evidence, the sentencing ranges, the possibility of consecutive sentencing, and the possibility the Petitioner might remain in prison for the rest of his life. The court found that the transcript of the guilty plea hearing reflected the following: (1) that the Petitioner acknowledged that counsel had satisfactorily answered questions, (2) that the Petitioner stated he did not have questions regarding the charges and the punishment, (3) that the Petitioner understood his plea and had the opportunity to clarify any uncertainties, including any uncertainties regarding "good time," (4) that the court explained community supervision for life and gave the Petitioner an opportunity to ask questions or withdraw his plea if he did not accept the condition. The post-conviction court made the following findings:

> Based on the evidence of the Petitioner's intelligence, the testimony provided by Petitioner and Counsel, and the excerpts of the plea colloquy, the court is satisfied that Petitioner knew what he was pleading to, the consequences of the plea and had the opportunity to ask questions when he was uncertain. Petitioner clearly stated that he understood what he was pleading to and that he was satisfied with Counsel's representation during the plea colloquy. Petitioner also did not hesitate to ask questions about community supervision for life when given the opportunity, and could have asked questions about "good time" credit as well if he so desired. It is clear from the record that Petitioner weighed the possible outcomes of a plea or trial, and, although begrudgingly, knowingly decided to take the 25 year plea with no possibility of parole instead of risking a possible cumulative life sentence at trial.

> Further, Counsel testified that his strategy from the outset of the case was to obtain a plea deal for Petitioner because the evidence in the case was strong and Petitioner was facing possible consecutive sentencing if convicted at trial. There is no evidence before the court that Counsel did not reasonably investigate the case and make the decision to advise Petitioner to take the plea based on this investigation. There is also ample evidence before the court that Counsel made every effort to explain to Petitioner the consequences of his plea versus the consequences of going to trial. The Court finds by clear and convincing evidence that Petitioner made a knowing and voluntary plea, and Counsel was not deficient in his representation of Petitioner prior to the guilty plea.

The court concluded that no analysis of the prejudice prong of *Strickland* was necessary because the Petitioner had failed to establish that trial counsel's performance had been deficient.

The record reflects that counsel discussed the facts, the charges, and the possible punishment with the Petitioner. Counsel filed a motion to suppress as a strategic measure designed to elicit a plea offer, and when the prosecutor extended an offer, counsel advised the Petitioner of the offer, its terms, the strength of the State's evidence, and the sentencing exposure. Counsel reviewed the offer with the Petitioner and advised him that he was likely to spend the rest of his life in jail if he were convicted at a trial. Counsel did not recall whether he and the Petitioner discussed behavioral credits, although he thought they had not. Counsel said, though, that his practice when advising a person who was charged with a sexual offense was to tell the person to be prepared to serve 100% of a sentence. The Petitioner claimed that he asked counsel if he would receive "good time" if he accepted the plea agreement and that counsel had responded that he did not know. The Petitioner's post-conviction hearing testimony reflects that he was aware the plea agreement called for sentences to be served at 100%. At the guilty plea hearing, the trial court questioned the Petitioner about his understanding of the agreement and the voluntariness of his plea. The court provided the Petitioner with the opportunity to ask questions, and the Petitioner took advantage of the opportunity by asking questions to clarify his understanding of community supervision for life. The court advised the Petitioner that his sentences would be served at 100% with no parole eligibility. The Petitioner did not ask the court about the possibility of accruing behavioral credits, and the court did not address behavioral credits.

The evidence does not preponderate against the post-conviction court's findings that the Petitioner was advised of the terms and consequences of his pleas, that he weighed the advantages of accepting the plea agreement against the risks of going to trial and facing the possibility of serving a sentence that exceeded his lifetime, and that he knowingly and voluntarily pleaded guilty. The record supports the court's determination that the Petitioner failed to establish clear and convincing evidence of counsel's deficient performance. The record also supports the court's determination that the plea was knowingly and voluntarily entered, which means, in turn, that the Petitioner failed to prove he was prejudiced by counsel's alleged deficient performance. He is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE

-10-